## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-00313

KEILON HILL;

> Plaintiff,

v.

CITY AND COUNTY OF DENVER, a municipal entity
CORPORAL ROBERT KLEMAN, in his individual capacity;
OFFICER THOMAS LUDWIG, in his individual capacity; and
OFFICER GARY YAMPOLSKY, in his individual capacity;

> Defendants.

---

## FIRST AMENDED COMPLAINT

---

Plaintiff, by and through his attorneys Benjamin DeGolia, Matthew Cron, Siddhartha H. Rathod, and Crist Whitney of RATHOD | MOHAMEDBHAI LLC, alleges as follows:

## I.     INTRODUCTION

The facts in this case present a veritable cornucopia of constitutional torts, as though the Denver Police Department ("DPD") were attempting to violate as many of Plaintiff Keilon Hill's constitutional rights as possible in a single encounter. By the end of the encounter, DPD officers had (1) unlawfully searched Mr. Hill's vehicle without a warrant or probable cause; (2) unlawfully arrested Mr. Hill after he criticized the search; (3) used significant force in carrying out the unlawful arrest; and (4) detained Mr. Hill and fabricated charges in retaliation for Mr. Hill's exercise of his First Amendment rights. The unmistakable subtext throughout this encounter is that Mr. Hill would not have been

1

subjected to this treatment but for the color of his skin. Mr. Hill files this Complaint not only to vindicate his own rights, but also to show the world that racial bias continues to pervade even relatively mundane police encounters, and to demand that DPD do better.

## II.     JURISDICTION

1.      This action arises under the Constitution and laws of the United States and is brought pursuant to 42 U.S.C. § 1983. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331. Jurisdiction supporting Plaintiffs' claim for attorneys' fees and cost is conferred by 42 U.S.C. § 1988.

2.      Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). All the events and omissions alleged herein occurred within the State of Colorado, and all the Defendants reside in this district.

## III.     PARTIES

3.      At all times mentioned herein, Plaintiff Keilon Hill was a citizen of the United States of America and a resident of and domiciled in the State of Colorado.

4.      Defendant City and County of Denver ("Denver") is a municipality organized under Colorado law and is a "person" subject to suit under 42 U.S.C. § 1983. The Denver Police Department ("DPD") is a law enforcement agency that is part of the City and County of Denver.

5.      At all times relevant to the subject matter of this litigation, Denver was responsible for the oversight, supervision, discipline, and training of the officers employed by the DPD.f

6.      At all times relevant to this complaint, Defendants Robert Kleman, Thomas Ludwig, and Gary Yampolsky were citizens of the United States and residents

2

of Colorado and were acting under color of state law in their capacity as law enforcement officers employed by the DPD.

## IV.    FACTUAL BACKGROUND

### The Minor Traffic Accident

7.      Plaintiff Keilon Hill, a Black man, was born on August 2, 1994.

8.      At the time of the Incident, Mr. Hill was a remotely enrolled graduate student at Louisiana State University ("LSU"); Mr. Hill has since graduated from LSU with a Master's of Business Administration degree.

9.      At approximately 5 p.m. on April 27, 2020, Mr. Hill was driving home on I-25 when he got into a minor traffic accident.

10.     Mr. Hill called 911 and reported the accident.

11.     The Fire Department arrived on the scene just before 5:20 p.m.; shortly thereafter, DPD Officer Thomas Ludwig arrived on the scene and activated his body-worn camera.

12.     Firefighters were speaking with Mr. Hill through the open driver-side door of his vehicle when Officer Ludwig arrived on the scene.

13.     Officer Ludwig glanced at Mr. Hill through Mr. Hill's passenger window but did not communicate with him. Instead, Officer Ludwig went to interview the driver and passenger of the other vehicle.

14.     The driver and the passenger of the other vehicle are both white.

15.     The driver and passenger claimed that Mr. Hill had caused the accident and described Mr. Hill as hostile and aggressive.

16.     Immediately after interviewing the white driver and passenger, Officer Ludwig stated to fellow DPD Officer Gary Yampolsky that Mr. Hill "tried to thread the fucking needle between two lanes dude, and he fucking side swipes them, and he's being a dick."

17.     Officer Ludwig described the accident and Mr. Hill's demeanor without speaking to Mr. Hill or obtaining any information about the accident other than what the other vehicle's white occupants told him.

18.     Based only on his initial glance at Mr. Hill, Officer Ludwig told Officer Yampolsky that Mr. Hill "looks like a turd."

### Officer Ludwig's Unlawful Search and the Retaliatory Arrest.

19.     While Officer Ludwig interviewed the other individuals involved in the accident, Mr. Hill was taken to the ambulance that had arrived at the scene.

20.     As Mr. Hill was being checked for injuries in the ambulance, Officer Ludwig proceeded to the driver's door of Mr. Hill's vehicle and looked in through the open window.

21.     Both the driver and passenger doors to Mr. Hill's two door vehicle were closed.

22.     There was nothing in plain view that would suggest any indication of criminal activity.

23.     Officer Ludwig had no reason to suspect Mr. Hill of any crime and there was no cause for him to search Mr. Hill's vehicle.

24.     Nonetheless, Officer Ludwig opened the driver's door of Mr. Hill's vehicle and he began searching the vehicle.

25.     As Officer Ludwig began his unlawful search of Mr. Hill's vehicle, Mr. Hill walked out of the ambulance and saw Officer Ludwig rummaging through his car.

26.     Mr. Hill immediately walked toward Officer Ludwig.

27.     As Mr. Hill approached Officer Ludwig, Mr. Hill noticed a pad of paper in Officer Ludwig's hand. Mr. Hill stated: "Hey why are you in my car? That's not a warrant to search my car."

28.     Officer Ludwig aggressively approached Mr. Hill, stating, "I smelled marijuana, that's why I'm in your car."

29.     Mr. Hill, while holding up his phone with one hand and pointing his finger at Officer Ludwig, responded, "That's not okay for you to search my car."

30.     Without warning, Officer Ludwig and Yampolsky immediately restrained Mr. Hill, pushed him against the hood of his car and handcuffed him.

31.     During the encounter, Officer Ludwig made no attempt to create space between himself and Mr. Hill.

32.     Mr. Hill offered no resistance; he obediently allowed the officers to handcuff him.

33.     Despite Mr. Hill's compliance, the officers used substantial force when effectuating the arrest.

34.     Even after Mr. Hill was handcuffed, Officer Yampolsky held Mr. Hill in a hyper-flexing wristlock.

35.     The hyper-flexing wristlock is a common pain compliance technique used on suspects who are actively resisting arrest.

36.     According to the Denver Police Department Operations Manual § 105.01 ("Use of Force" Policy), wrist locks are a "type of hold intended to physically control the movement of an individual."

37.     According to the Denver Police Department Operations Manual, hand control techniques such as a hyper-flexing wrist lock should only be used against suspects who are at least verbally non-compliant to an officer's commands.

38.     The disproportionate degree of force used against Mr. Hill reflects Officer Ludwig and Yampolsky's anger that Mr. Hill had criticized Officer Ludwig's unlawful search.

39.     Officers Ludwig and Yampolsky pressed Mr. Hill against the hood of his car as Mr. Hill expressed his surprise at the unexpected arrest by exclaiming, "What?! Dude, really?!" "What are you doing?"

40.     Officer Yampolsky continued to apply the wristlock pain compliance technique while Officer Ludwig angrily admonished Mr. Hill, stating: "What are you doing stepping to me, huh? Getting in my face? I don't think so, dude."

41.     Officers Ludwig and Yampolsky then escorted Mr. Hill to Officer Yampolsky's patrol car.

42.     Mr. Hill asked the officers why he was being arrested and Officer Yampolsky responded by asking Mr. Hill why he was "stepping to the cops" and told Mr. Hill that he was "being an asshole."

43.     Officer Ludwig directed Mr. Hill into the back of the patrol car.

44.     To justify his warrantless search of Mr. Hill's vehicle, Officer Ludwig explained that he "wanted to see if Mr. Hill was intoxicated."

45.     Officer Ludwig did not explain why he chose to search Mr. Hill's vehicle but did not  ask Mr. Hill to perform a field sobriety test.

46.     Mr. Hill had just been examined by medical staff in the ambulance and he was not intoxicated.

47.     Officer Ludwig did not ask the medical staff whether there was any reason to believe that Mr. Hill was intoxicated.

48.     When Mr. Hill asked Officers Ludwig and Yampolsky again why he was being arrested, Officer Yampolsky told Mr. Hill: "We'll let you know in a few here, okay?"

49.     After Mr. Hill was placed in the back of his patrol car, despite the ongoing nature of the encounter, Officer Yampolsky turned off his body-worn camera.

50.     While he was being held in the back Officer Yampolsky's patrol car, Mr. Hill informed the officers that he was a university student and that he just wanted to go home to finish his homework.

51.     The officers told Mr. Hill that they did not care what "cheap ass college" Mr. Hill attended.

52.     The officers also admonished Mr. Hill for "spewing liberal bullshit" after Mr. Hill stated that he wanted to speak to a lawyer.

**Corporal Kleman's Retaliatory Decision to Detain Mr. Hill.**

53.     Corporal Kleman arrived on the scene sometime after Officers Ludwig and Yampolsky placed Mr. Hill in the back of Officer Yampolsky's patrol car.

54.     When Corporal Kleman arrived at the scene, he immediately began interrogating Mr. Hill about whether Officers Ludwig and Yampolksy injured him during his arrest.

55.     Mr. Hill told Corporal Kleman that it was hard for him to determine if he was injured because he needed to be examined by a doctor.

56.     Corporal Kleman then offered Mr. Hill an unmistakable *quid pro quo*, telling Mr. Hill: "If you say that you have injuries, I'm going to do something different, okay? If you say that you don't have any injuries, then that means that nothing has happened, and I can let you drive away."

57.     Corporal Kleman did not articulate any legitimate, non-retaliatory reason why Mr. Hill would be released only if he disavowed being injured by the arresting officers.

58.     Mr. Hill repeated his same answer that he could not determine whether he was injured because he needed to be examined by a doctor.

59.     Mr. Hill repeated this statement at least six times during their interaction.

60.     In retaliation for Mr. Hill's refusal to state that he was not injured, Corporal Kleman punished Mr. Hill by continuing the unlawful detention and instructing his officers to take Mr. Hill to the Denver County Jail to "do paperwork on him."

61.     When Corporal Kleman returned Mr. Hill to the back of Officer Yampolsky's patrol car, Mr. Hill asked again why he was under arrest.

62.     Mr. Hill told the officers, "I'm just trying to go home. Someone hit my car, and you all are taking me to jail? This shit doesn't even sound right."

63.     Corporal Kleman ordered Mr. Hill to get fully inside the back of the patrol car and promised he would "tell [him] what's going to happen."

64.     Instead, Corporal Kleman closed the door without explaining to Mr. Hill the reason for his arrest.

65.     After placing Mr. Hill back in the patrol car, Corporal Kleman finally pulled aside his other officers to discuss what had occurred and what injuries, if any, Mr. Hill might have sustained.

66.     Before the officers could respond, Corporal Kleman warned them that "everything is recording, I'm recording everything," referencing his body-worn camera.

67.     Despite the fact Mr. Hill was never violent toward any of the officers, Officer Ludwig informed Corporal Kleman that he "would really like to not transport him in [his] car," that "he doesn't have a cage" and that Mr. Hill "is gonna go crazy."

68.     Mr. Hill was eventually transported to the Denver City Jail, where he was held for nearly 24 hours before being released on bond.

69.     Mr. Hill was not examined for medical injuries by Denver personnel at any point after his arrest.

70.     Mr. Hill was charged with interference with police authority, a violation of § 38-31 of the Denver Municipal Code.

71.     After Mr. Hill entered a not-guilty plea, the City Attorney moved to voluntarily dismiss the charge, stating that it would be unable to prove the case beyond a reasonable doubt.

72.     The court dismissed the case the same day.

73.     Two days following his release from custody, Mr. Hill went to St. Joseph's Hospital for a medical examination.

74.     Mr. Hill was diagnosed with a closed head injury, cervical strain, strain of the thoracic region, a right shoulder injury, and paresthesia of his right upper limb.

75.     As a result of his discriminatory, retaliatory, and unconstitutional treatment at the hands of Denver Police Department personnel, Mr. Hill suffered significant emotional distress, for which he needed to undergo mental health treatment.

## V.     Allegations Establishing Municipal Liability

76.     The Defendant officers' retaliatory arrest and prosecution were conducted pursuant to Denver Police Department's custom, policy and/or practice of arresting, detaining, and charging citizens who exercise their First Amendment Right to criticize police conduct.

77.     For instance, on September 23, 2018, Brian Loma was arrested for shouting "fuck the police!" while protesting Denver Police Department's treatment of Denver's homeless citizens. Upon witnessing his friend being arrested for exercising his First Amendment right to free expression, Mikel Whitney began photographing the unlawful arrest. Officers demanded to know whether Mr. Whitney had taken photographs. When Mr. Whitney responded that he "did not take a fucking picture," officers arrested Mr. Whitney, as well.

78.     On July 5, 2018, Susan Greene, a citizen journalist, witnessed Denver Police Department officers arresting a naked man on the street. Ms. Greene began filming the arrest with her smartphone from a safe distance. When she refused to comply with officers' unlawful commands that she cease filming, the officers arrested her in retaliation for her exercise of her First Amendment right to photograph the police on a public sidewalk. Ms. Greene's First Amendment, First Amendment retaliation, and Fourth Amendment excessive force claims against Denver and DPD officers were

settled in August 2019 for $50,000 along with required First Amendment training for DPD officers.

79.     On August 14, 2014, Levi Frasier witnessed Denver Police Department officers repeatedly punch an unarmed civilian in the head and trip a pregnant woman, causing her to fall to the ground. Believing the officers were committing illegal acts of misconduct against the unarmed civilian and pregnant woman, Mr. Frasier began exercising his First Amendment right by video recording the officers with his Samsung tablet. Upon seeing Mr. Frasier recording, the officers surrounded Mr. Frasier, demanded he turn over his tablet, and threatened him with arrest if he failed to comply. After Mr. Frasier refused, the officers illegally seized Mr. Frasier's tablet and searched it in retaliation for his protected First Amendment activity and in violation of his Fourth Amendment right to be free from unlawful search.

80.     This custom, policy, and/or practice was consciously permitted, authorized, or executed by the City and County of Denver. They reflect an intentional decision to choose from among various alternative courses of action and were a cause of the violations of constitutional rights described herein.

81.     No disciplinary action was taken against any of the Defendant officers for their retaliation against Mr. Hill. The decision to refrain from any disciplinary action against officers who engage in unlawful conduct is part of a custom or practice of declining to discipline officers for constitutional violations. By declining to discipline Defendant officers for their unlawful actions, the City and County of Denver ratified those actions. This ratification demonstrates the actions were taken pursuant to the

City's training and policies, and that such conduct is standard practice within the Denver Police Department.

82.     The City and County of Denver's failure to uphold its obligation to train its officers is a root cause of its officers' unconstitutional conduct. Because of the City and County of Denver's failure to train and discipline its officers, similar unconstitutional acts can be expected in the future.

83.     On September 1, 2021, Mr. Hill, through his attorneys, filed a complaint with the Office of the Independent Monitor and formally requested a full and thorough investigation into the conduct of Corporal Kleman and Officers Ludwig and Yampolsky to determine whether its employees' conduct was lawful and concordant with the City's policies.

84.     Mr. Hill specifically complained to the Office of the Independent Monitor that the Defendant officers had (1) unlawfully searched Mr. Hill's vehicle; (2) arrested Mr. Hill in retaliation for objecting to the unlawful search; and (3) Corporal Kleman's retaliatory decision to detain and prosecute Mr. Hill because Mr. Hill would not disavow being injured by the arresting officers.

85.     Although the Office of the Independent Monitor informed Mr. Hill that the complaint was being referred to the Denver Police Department Internal Affairs Department, the DPD has not disciplined any of the three officers for their plainly unconstitutional conduct.

## VI.     CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Fourth Amendment Unlawful Warrantless Search**
**(Against Defendant Officer Ludwig)**

86.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if set forth herein.

87.     All individual Defendants to this claim, at all relevant times hereto, were acting under color of state law in their capacities as City and County of Denver law enforcement officers.

88.     At all relevant times of his arrest, Mr. Hill had a clearly established right under the Fourth Amendment to the United States Constitution to be secure in his person and effects against unreasonable vehicular searches.

89.     Defendant Officer Ludwig entered Mr. Hill's vehicle without Mr. Hill's consent.

90.     Defendant Officer Ludwig had no warrant authorizing entry into Mr. Hill's vehicle.

91.     No probable cause existed which would have permitted Defendant Officer Ludwig to enter Mr. Hill's vehicle, and there was no valid legal justification for Officer Ludwig to enter Mr. Hill's vehicle.

92.     Defendant Officer Ludwig's search of Mr. Hill's vehicle was objectively unreasonable under the circumstances.

93.     Defendant Officer Ludwig's conduct violated clearly established rights belonging to Mr. Hill of which any reasonable law enforcement officer knew or should have known.

94.     Defendant Officer Ludwig's actions, as described herein, were motivated by malice and/or involved reckless or callous indifference to Mr. Hill's federally protected rights, and they engaged in these actions and omissions intentionally, willfully, and/or

wantonly, demonstrating deliberate indifference to, and a reckless disregard for, Mr. Hill's constitutionally protected rights.

95.     The unlawful acts herein described were carried out pursuant to the customs, practices, policies, and/or training of the Denver Police Department.

96.     Defendant City and County of Denver has a custom, policy, and practice of accepting, condoning, ratifying, and even encouraging unlawful warrantless searches like Defendant Ludwig's action here.

97.     Defendant City and County of Denver's failure to adequately train and supervise its officers with respect to warrantless entry exhibited deliberate indifference to a known and obvious risk of harm to Mr. Hill and others.

98.     The acts or omissions of each Defendant, including the unconstitutional custom, policy, and practices described herein, were a legal and proximate cause of Plaintiff's injuries, damages, and losses.

99.     As a result of Defendants' unlawful actions described here, Mr. Hill suffered actual physical, economic, and emotional injuries.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Fourth Amendment Unlawful Warrantless Seizure**
**(Against Defendant Officers Ludwig and Yampolsky)**

100.    Plaintiff hereby incorporates all other paragraphs of this Complaint as it set forth herein.

101.    All the individual Defendants to this claim, at all relevant times hereto, were acting under color of state law in their capacities as City and County of Denver law enforcement officers.

102.    At the time of his arrest, Mr. Hill had a clearly established right under the Fourth Amendment to the United States Constitution to be secure in his person against unreasonable seizures.

103.    Defendant Officers Ludwig and Yampolsky lacked probable cause to arrest Mr. Hill.

104.    Defendant Officers Ludwig and Yampolsky arrested Mr. Hill in retaliation for Mr. Hill's objection to Officer Ludwig's unconstitutional search of his vehicle.

105.    Criticizing a police officer's unlawful conduct does not itself create probable cause for an arrest.

106.    As they seized Mr. Hill, Officer Ludwig commanded Mr. Hill to "back up" and "get out of my face." Officer Ludwig did not give Mr. Hill any opportunity to comply with this command prior to arresting him.

107.    When Mr. Hill questioned why he was being arrested, Officer Yampolsky told him he was, "stepping to the cops" and "being an asshole."

108.    When Mr. Hill later asked why he was being arrested, Officer Yampolsky replied, "We'll let you know in a few here, okay?"

109.    Defendant officers' inability to state any reason for Mr. Hill's arrest highlights the arbitrary nature of the arrest, and demonstrates that the subsequent Interference charge was nothing more than an *ex post* rationalization for the officers' unlawful actions.

110.    Defendant officers' conduct violated clearly established rights belonging to Mr. Hill of which any reasonable law enforcement officer knew or should have known.

111.    Defendants' actions, as described herein, were motivated by malice and/or involved reckless or callous indifference to Mr. Hill's federally protected rights, and they engaged in these actions and omissions intentionally, willfully, and/wantonly, demonstrating deliberate indifference to, and a reckless disregard for, Mr. Hill's constitutionally protected rights.

112.    Defendant's actions and omissions, as described herein, were objectively unreasonable under the circumstances.

113.    The acts or omissions of each Defendant, including the unconstitutional custom, policy, and practices described herein, were a legal and proximate cause of Plaintiff's injuries, damages, and losses.

114.    As a direct result of Defendant's unlawful actions described here, Mr. Hill suffered actual physical and emotional injuries leading up to and including his death.

### THIRD CLAIM FOR RELIEF
### 42 U.S.C. § 1983 - First Amendment Retaliation
### (Against Defendant Officers Ludwig and Yampolsky, and Defendant City of Denver)

115.    Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

116.    Defendants are "persons" within the meaning of 42 U.S.C. § 1983.

117.    Defendant Officers Ludwig and Yampolsky acted under color of state law, and within the course and scope of their employment in their capacity as law enforcement officers of the City and County of Denver.

118.    Plaintiff engaged in First Amendment protected expression by criticizing Officer Ludwig for unlawfully searching his vehicle.

119.   Defendant Officers Ludwig and Yampolsky retaliated against Mr. Hill for his First Amendment protected activity by placing him under arrest.

120.   Defendant Officers Ludwig and Yampolsky's arrest of Mr. Hill would chill a person of ordinary firmness from engaging in activity protected by the First Amendment.

121.   By unlawfully arresting Mr. Hill, Defendants sought to punish him for exercising his First Amendment rights, to silence him, and to deter him from criticizing police officers in the future.

122.   Defendants' retaliatory action were substantially motivated by Mr. Hill's exercise of his First Amendment rights and the content and viewpoints expressed in his speech.

123.   At all relevant times, Mr. Hill had a clearly established right under the First Amendment to be free from retaliation. Any reasonable law enforcement officer knew or should have known of this clearly established right.

124.   Defendant Officers Ludwig and Yampolsky engaged in their conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Mr. Hill's constitutional rights, and is therefore liable to Mr. Hill for punitive damages.

125.   Defendant City and County of Denver's custom, policy, and/or practice of permitting the arrest of citizens who criticize the police is not a reasonable regulation of Plaintiff's First Amendment protected activities.

126.   Defendant City and County of Denver failed to properly supervise and train its officers with respect to the First Amendment, the rights of persons to exercise their First Amendment rights, and to respond in a constitutional manner to a message that is critical of law enforcement.

127.    As a direct and proximate cause and consequence of Defendants' unconstitutional acts and omissions, described above, Plaintiff suffered injuries, damages, and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered during and after the arrest, and other compensatory and special damages.

128.    Defendant's intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States.

### FOURTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983 - First Amendment Retaliation
### (Against Defendant Corporal Kleman and Defendant City of Denver)

129.    Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

130.    Defendants are "persons" within the meaning of 42 U.S.C. § 1983.

131.    Defendant Corporal Kleman acted under color of state law, and within the course and scope of his employment in their capacity as law enforcement officers of the City and County of Denver.

132.    Plaintiff engaged in First Amendment protected expression when he refused to follow Corporal Kleman's demands to falsely state he was not injured by Officers Ludwig and Yampolsky's use of force against him.

133.    Defendant Corporal Kleman retaliated against Mr. Hill for his First Amendment protected activity by continuing Mr. Hill's detention and ordering his officers to bring Mr. Hill to the Denver City Jail for booking.

134.     Defendant Corporal Kleman's decision to detain and book Mr. Hill would chill a person of ordinary firmness from engaging in activity protected by the First Amendment.

135.     By unlawfully arresting Mr. Hill, Defendants sought to punish him for exercising his First Amendment rights, to silence him, and to deter him from criticizing police officers in the future.

136.     Defendants' retaliatory actions were substantially motivated by Mr. Hill's exercise of his First Amendment rights and the content and viewpoints expressed in his speech.

137.     At all relevant times, Mr. Hill had a clearly established right under the First Amendment to be free from retaliation. Any reasonable law enforcement officer knew or should have known of this clearly established right.

138.     Defendant Corporal Kleman engaged in his conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Mr. Hill's constitutional rights, and is therefore liable to Mr. Hill for punitive damages.

139.     Defendant City and County of Denver's custom, policy, or practice of permitting the arrest, detention, and prosecution of citizens who criticize the police is not a reasonable regulation of Plaintiff's First Amendment protected activities.

140.     Defendant City and County of Denver failed to properly supervise and train its officers with respect to the First Amendment, the rights of persons to exercise their First Amendment rights, and to respond in a constitutional manner to a message that is critical of law enforcement.

141.    As a direct and proximate cause and consequence of Defendants'
unconstitutional acts and omissions, described above, Plaintiff suffered injuries,
damages, and losses, including but not limited to non-economic damages, economic
damages, the physical and mental pain and anguish Plaintiff suffered during and after
the arrest, and other compensatory and special damages.

142.    Defendant's intentional actions or inactions as described herein
intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and
immunities secured by the Constitution of the United States.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in its favor, and
against each Defendant, for the following relief:

a.      All declaratory relief and injunctive relief, as appropriate;

b.      Actual economic damages as established at trial

c.      Compensatory damages, including but not limited to those for future
pecuniary and non-pecuniary losses, emotional pain, suffering, inconvenience, mental
anguish, loss of enjoyment of life, medical bills, and other non-pecuniary losses;

d.      Punitive damages for all claims as allowed by law in an amount to be
determined at trial;

e.      Pre-judgment and post-judgment interest at the highest lawful rate;

f.      The maximum tax-offset permitted by law;

g.      Attorneys' fees and costs; and

h.      Such further relief as justice requires, and any other relief as this court
deems just and proper.

## VIII.   <u>JURY DEMAND</u>

Plaintiff hereby demands a jury trial on all issues so triable.

Dated: March 17, 2022

RATHOD | MOHAMEDBHAI LLC

*s/ Benjamin DeGolia*
Benjamin DeGolia
Matthew Cron
Siddhartha H. Rathod
Crist Whitney
2701 Lawrence Street, Suite 100
Denver, CO 80205
(303) 578-4400 (phone)
(303) 578-4401 (facsimile)
bd@rmlawyers.com
mc@rmlawyers.com
sr@rmlawyers.com
cw@rmlawyers.com